UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff,                11 MC 285 (RPP)

     - against -

**OPINION & ORDER**

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.
------------------------------------------------------------X
In re:

BERNARD L. MADOFF,

                    Debtor.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On August 12, 2011, Diane and Roger Peskin, and a large group of other customers ("Movants") of Bernard L. Madoff Investment Securities LLC ("BLMIS") filed a motion for leave to appeal the December 14, 2010 order of the United States Bankruptcy Court Approving Applications for Allowance of Interim Compensation for Services Rendered and Reimbursement of Expenses ("Order") pursuant to 28 U.S.C. § 158(a), which approved interim compensation for the bankruptcy trustee for the liquidation of the business of BLMIS, Irving H. Picard ("Trustee"), and the Trustee's counsel, Baker & Hostetler LLP ("B&H").

## I. BACKGROUND

A.    <u>Initial Proceedings</u>

On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York ("the

District Court") against Bernard L. Madoff and BLMIS ("Debtors"), alleging that the Debtors engaged in fraud through the investment advisor activities of BLMIS. (See Memorandum of Law of Irving H. Picard and Baker & Hostetler in Opposition to Motion of Diane and Roger Peskin and Certain Other Customers for Leave to Appeal ("Trustee's Opp. Mem.") at 3.) On December 15, 2008, pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to a joinder of the SEC's action with an application of the Securities Investor Protection Corporation ("SIPC"). (Trustee's Opp. Mem. at 3.) The application filed by SIPC alleged that BLMIS was not able to meet its obligations to securities customers as they came due and therefore its customers needed the protection afforded by SIPA. (Id.) See 15 U.S.C. § 78eee(a)(3). The District Court ordered the appointment of the Trustee and counsel, B&H, under section 78eee(b)(3) of SIPA,[1] and referred the liquidation proceedings to the Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA. (Response of the Securities Investor Protection Corporation in Opposition to Motion by Diane and Roger Peskin for Leave to Appeal ("SIPC's Opp. Mem.") at 3; Trustee's Opp. Mem. at 4.)

Following removal of the case to the Bankruptcy Court, the court found the Trustee and B&H disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2014(a), and accordingly, in compliance with section 78eee(b)(3) of SIPA, the Bankruptcy Code and the Bankruptcy Rules. (Trustee's Opp. Mem. at 4.) On February 25, 2009, the Bankruptcy Court entered an order pursuant to section 78eee(b) of SIPA, and relevant provisions of the Bankruptcy

---

[1] Pursuant to section 78eee(b)(3) of SIPA, the appointments were specified by SIPC, "in its sole discretion." SIPA also permits the persons appointed as trustee and as counsel for the trustee be associated with the same firm. 15 U.S.C. § 78eee(b)(3).

Code and the Bankruptcy Rules, establishing the procedures governing interim compensation of the Trustee and B&H, including applications by the Trustee for interim compensation for services performed by the Trustee and B&H. (Trustee's Opp. Mem. at 4-5.)

B.  Responsibilities and Activities of Trustee and B&H

A trustee in a liquidation proceeding under SIPA is vested with "the same powers and rights . . . as a trustee in a case under title 11 of the United States Code (11 U.S.C. §§ 101 et seq.)" and is subject to "the same duties as a trustee in a case under chapter 7 of title 11 of the United States Code (11 U.S.C. §§ 701 et seq.)." 15 U.S.C. § 78fff-1(a)-(b). In addition, a trustee in a liquidation proceeding under SIPA must also carry out investigations of the activities of the debtor, and review and determine customer claims. See 15 U.S.C. § 78fff-1(d). (See SIPC's Opp. Mem. at 3-4.)

Of the 16,394 claims filed with the Trustee in this liquidation proceeding, the Trustee had determined 13,403 of them as of September 30, 2010. The Trustee allowed 2,232 of the 13,403 claims and authorized advances of approximately $728 million from the "SIPC Fund" to those customers with allowed claims pursuant to section 78fff-3(a) of SIPA.[2] (SIPC's Opp. Mem. at 4.) As of September 30, 2010, the aggregate amount of these allowed claims totaled over $5.6 billion, but the Trustee expected the aggregate amount of all allowed claims to total over $17 billion.[3] This total includes claims where

---

[2] SIPC is authorized to advance funds – not to exceed $500,000 for each customer – to the Trustee "[i]n order to provide for prompt payment and satisfaction of customer claims." 15 U.S.C. § 78fff-3(a). All expenditures made by SIPC are part of the SIPC Fund, including customer claim advances. See 15 U.S.C. § 78ddd(a). The primary source of the SIPC Fund's cash on hand is member assessments. See 15 U.S.C. § 78ddd(c).

[3] The investors' net equity was calculated based on the "Net Investment Method," which credits the amount of cash deposited by the customer into their BLMIS account, less any amounts withdrawn from it. In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 235 (2d Cir. 2011). The Net Investment Method limits

3

the customer is also a defendant in a proceeding under section 502(d) of the Bankruptcy Code.[4] (Declaration of Helen Davis Chaitman in Support of Motion for Leave to Appeal Dated December 28, 2010 ("Chaitman Decl.") Ex. C, at 17.) Using the Net Investment Method to identify allowable claims, the Trustee has denied claims of those customers whose withdrawal amounts have exceeded their initial investments and subsequent deposits. In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d at 241 (affirming the Bankruptcy Court's order rejecting the "Last Statement Method" as the method to calculate the investors' net equity and upholding the Trustee's denial of customer claims). Denied customer claims are classified as claims of general unsecured creditors under SIPA. See 15 U.S.C. § 78fff-2(e)(2)-(3). (See also Tr. at 4.)

Excluding the SIPC-funded advance, allowed customer claims are satisfied with recovered customer property; customer property includes "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted." 15 U.S.C. § 78lll(4). (See SIPC's Opp. Mem. at 3 n.2.) Customer property recovered by the Trustee is separate from the debtor's general estate and a resulting fund of recovered customer property is established for priority distribution exclusively among customers. In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d at 233.

---

the class of customers who have allowable claims against distributable customer property to those customers who deposited more cash into their investment accounts than they withdrew. Id.

[4] In order to participate in the pro rata distribution mandated in SIPA, the defendant-customer must first pay back money received as preferences and fraudulent conveyances. (Chaitman Decl. Ex. C, at 29-30.) As explained by B&H's counsel at oral argument, the defendant-customer's claim will be classified as an allowed claim after the defendant-customer reaches an "accommodation" with the Trustee with respect to the funds withdrawn "during the preference and fraudulent conveyance period." (Oral Argument Transcript ("Tr.") at 27.) B&H's counsel asserts that these claims total over $12 billion, bringing the aggregate amount of allowed claims to over $17 billion. (Id.)

It is distributed ratably among customers with allowed customer claims "on the basis and to the extent of their respective net equities." 15 U.S.C. § 78fff-2(c)(1). Any customer property remaining after distribution becomes part of the general estate of the debtor. See id.

C.    The Movants

Movants Diane and Roger Peskin are former BLMIS customers who filed claims in the liquidation proceeding at the bankruptcy court. The Trustee allowed their claim for $2,310,191.25 and advanced $500,000 from the SIPC Fund in partial satisfaction of their claim. (SIPC's Opp. Mem. at 2-3.) Full satisfaction of their claim rests upon the amount of customer property the Trustee recovers. (Id. at 3.)

Movants also include over eighty other former BLMIS customers. (Chaitman Decl. Ex. A.) It is unclear what claims these former BLMIS customers have in this liquidation proceeding. On December 14, 2010, at a hearing before the Bankruptcy Court regarding the fifth interim fee application, Movants' counsel stated that she represented several hundred former BLMIS investors, many of whom had allowed claims and were forced by the length of this liquidation proceeding to sell them. (Chaitman Decl. Ex. C, at 27.) At oral argument, Movants' counsel stated that she represents "a large group of people who had claims that [the Trustee] did not allow as customer claims, but he recognized as general unsecured claims." (Tr. at 4.)

D.    Interim Fee Applications

Between July 2009 and November 2010, the Trustee and B&H submitted five interim fee applications, which have all been granted by the Bankruptcy Court. On December 14, 2010, the Bankruptcy Court held a hearing on the fifth interim fee

5

application, during which the Trustee and SIPC's counsel advised the court that there was no reasonable expectation of recoupment of the administrative advancements requested by the Trustee and B&H, in light of the pending litigation against well-financed adversaries.  (Chaitman Decl. Ex. C, at 14, 25.)  At that hearing, SIPC's counsel also informed the court that SIPC was "very aware" of the Trustee's activities, and while recommending no reduction on the amount requested, had reviewed each of the fee applications and invoices "intensively." (Id. at 26.)  The Bankruptcy Court granted the Trustee's fees as requested, agreeing with SIPC that "at this juncture there is no reasonable expectation of recoupment,"[5] (id. at 32,) and went so far as to call any opinion to the contrary "rank speculation," (id.)

Previously, Movants have objected to all five interim fee applications at the Bankruptcy Court.  Movants have also sought leave to appeal four of the Bankruptcy Court's orders granting the Trustee's and B&H's application for interim compensation.  Movants' motion for leave to appeal the first interim fee order was denied by the District Court on January 11, 2010.  Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff I), M 47 (GBD), 2010 U.S. Dist. LEXIS 3037, at *1 (S.D.N.Y Jan. 11, 2010).  Movants raised several questions of law in the motion, none of which the District Court deemed controlling in satisfaction of 28 U.S.C. § 1292(b).  Id. at *2-3.

Movants also moved for leave to appeal the second interim fee order, which is submitted and pending before the District Court.  Movants' motion for leave to appeal the third interim fee order was denied by the District Court on August 6, 2010.  Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff II), SIPA Liquidation No.

---

[5] At oral argument, SIPC's counsel stated that the Bankruptcy Court also reviews the time records of Trustee and B&H.  (Tr. at 37.)  However, there is no indication from the record that the Bankruptcy Court has reviewed these documents, or is required to in light of the statutory language.  See supra.

08-01789, 2010 U.S. Dist. LEXIS 81492, at *1 (S.D.N.Y Aug. 8, 2010).  Again, Movants were found to have failed to present any controlling questions of law.  Id. at *13.  Movants did not move for leave to appeal the fourth interim fee order.

Movants now move for leave to appeal the Bankruptcy Court's December 14, 2010 Order pursuant to Bankruptcy Rules 8001(b) and 8003.  Movants argue that the Bankruptcy Court erred in its choice of interim fee standard set out in section 78eee(b)(5)(C) of SIPA.  Movants assert that the Trustee's statement that SIPC is "without reasonable expectation of recoupment" is inconsistent with the current recovery total and pending recovery claims, and contend that the Trustee and B&H's fee applications are unreasonable in light of the time records of the Trustee and B&H.  (Memorandum of Law in Support of Motion for Leave to Appeal ("Movants' Mem."))  On January 11, 2011, the Trustee and B&H filed a memorandum in opposition to the motion.  Also on January 11, 2011, SIPC filed a memorandum in opposition to the motion.  On January 17, 2011, Movants filed a memorandum of law in reply.  (Reply Memorandum of Law in Support of Motion for Leave to Appeal ("Reply"))  Oral argument was held on October 13, 2011.

## II. DISCUSSION

Movants' motion for leave to appeal the Bankruptcy Court's Order is denied for failure to satisfy the statutory criteria for certifying an interlocutory appeal.

A.   Legal Standard

A motion for leave to appeal an interlocutory order from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(3), is taken in "the same manner as appeals in civil

7

proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2).

When considering whether to grant leave to appeal an interlocutory order, a District Court will apply the standard in 28 U.S.C. § 1292(b).  Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd. (In re Lehman Bros. Holdings, Inc.), 422 B.R. 403, 405 (S.D.N.Y. 2009); In re Beker Industries Corp., 89 B.R. 336, 341 (S.D.N.Y. 1988); Johns-Mansville Corp. v. Silverman (In re Johns-Manville Corp.), 47 B.R. 957, 960 (S.D.N.Y. 1985).  In order to grant leave to appeal an interlocutory order three conditions must be met: (1) the order in question involves a controlling question of law; (2) the order contains substantial ground for difference of opinion; *and* (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b) (emphasis added).

The controlling question of law implicated in the interlocutory order must be a "pure" question of law that the court can decide "quickly and cleanly without having to study the record."  In re Lehman Bros. Holdings, Inc., 422 B.R. at 406 (citation omitted).  The effect of the question of law – namely its materiality – on the outcome of the litigation may also make the issue "controlling."  In re Adelphia Commc'ns Corp., 333 B.R. 649, 658 (S.D.N.Y. 2005); see North Fork Bank v. Abelson, 207 B.R. 382, 389-90 (E.D.N.Y. 1997) (finding the issue controlling because its determination affected the subject matter jurisdiction of the bankruptcy court).  Finding that a question of law is controlling does not moot the determination of whether an appeal will materially advance the ultimate termination of litigation. See In re Oxford Health Plans, Inc., 182 F.R.D. 51, 55 (S.D.N.Y. 1998).

The distinction between questions of law and fact is important under section 1292(b).[6]  See Thaler v. Estate of Arbore (In re Poseidon), 443 B.R. 271, 276-77 (E.D.N.Y. 2010).  The legal issue raised in a motion for interlocutory appeal cannot be "essentially based in nature."  Brown v. City of Oneonta, 858 F. Supp. 340, 349 (N.D.N.Y. 1994), rev'd on other grounds by, 106 F.3d 1125 (2d Cir. 1997)).  "A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)."  Fox v. Bank Mandiri, 377 B.R. 69, 75 (S.D.N.Y. 2007).  But even a finding by the bankruptcy court that raises a "legal" question will be denied interlocutory appeal if "the resolution of the issue requires a heavily fact-based analysis."  In re Poseidon, 443 B.R. at 276 (internal citation omitted).

Whether an issue has substantial ground for dispute depends on the strength of the arguments in opposition to the challenged ruling.  Flor v. BOT Fin. Corp. (In re Flor), 79 F.3d 281, 284 (2d Cir. 1996); see also Bilello v. JPMorgan Chase Ret. Plan, 603 F. Supp. 2d 590, 593-95 (S.D.N.Y. 2009) (finding no substantial ground for difference of opinion where the cases cited by appellants were factually distinguishable or not analyzed in detail).  "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  In re Flor, 79 F.3d at 284 (denying interlocutory appeal where appellant debtors questioned the application of a recent United States Supreme Court decision).  But see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro

---

[6] In contrast, a question of law for appellate review of an agency determination under 8 U.S.C. § 1252(a)(2)(D) may arise "in fact-finding which is flawed by an error of law" or "where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard."  Gui Yin Liu v. INS, 508 F.3d 716, 721 (2d Cir. 2007).

In Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990) (a difficult issue of first impression provided a substantial ground for difference of opinion where the question involved the impleaded Palestine Liberation Organization's "undefined juristic nature" and arguable "functional" immunity).  At least some precedent that bears on the matter, however thin, may establish a substantial ground for dispute.  See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 156-157 (D.N.J. 2005) (granting interlocutory appellate review where the question of law and the substantial ground for dispute involved the scope of the bankruptcy court's construction of the Bankruptcy Rules).

An immediate appeal of an interlocutory order materially advances the ultimate termination of the litigation if it "promises to advance the time . . . or to shorten the time required for [litigation]," In re Oxford Health Plans, Inc., 182 F.R.D. at 53, or has "the potential for substantial acceleration of the disposition of the litigation," In re Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978).

Leave to appeal prior to the entry of a final judgment should be limited to exceptional circumstances.  In re Johns-Manville Corp., 47 B.R. at 960 (appeal of non-final bankruptcy order should not be granted where it would "contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation").  Thus, section 1292(b) certification is limited to cases where review might avoid "protracted and expensive litigation," and should not be extended to merely "provide early review of difficult rulings in hard cases." German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995).  The decision whether to grant an appeal from an interlocutory

order of the bankruptcy court is within the court's discretion.  Gibson v. Kassover, 343 F.3d 91, 94 (2d Cir. 2003).

B.     The Motion

Movants' memorandum states that its issue on appeal is "[w]hether the bankruptcy court improperly approved the Fee Application without scrutinizing the reasonableness or the appropriateness of the compensation requested where the Movants presented uncontested evidence that SIPC had a reasonable expectation of reimbursement and uncontested evidence that SIPC was approving the Trustee's counsel's unreasonable and inappropriate compensation requests."[7] (Movants' Mem. at 9.)  As stated, Movants conflate two distinct questions: (1) whether on December 14, 2010 SIPC was without reasonable expectation of recoupment for those administrative funds advanced to the Trustee and B&H, and (2) whether the Bankruptcy Court correctly determined that the Trustee's and B&H's fees were reasonable.  Neither question is a "controlling" question of law.

Section 78eee(b)(5)(C) of SIPA outlines two standards for ruling on interim fee applications.  The first standard applies when SIPC advances the expenses "without reasonable expectation of recoupment . . . and there is no difference between the amounts requested and the amounts recommended by SIPC."  15 U.S.C. § 78eee(b)(5)(C).  The

---

[7] While Movants' memorandum states there is only one issue on appeal, Movants' Reply raises a second question of law: "Can SIPC use section 78eee(b)(5)(C) as a tool to assure that the Trustee acts in SIPC's interests rather than in the interests of the customers to whom, by law, the Trustee owes a fiduciary duty?" (Reply at 2.)  This "issue of law" clearly suggests a court review the Trustee's conduct and is therefore not a pure question of law.  Movants raised the issue of the Trustee's alleged conflict of interest in two previous motions for leave to appeal an interlocutory order.  In re Madoff I, 2010 U.S. Dist. LEXIS 3037, at *2-3; In re Madoff II, 2010 U.S. Dist. LEXIS 81492, at *13-14.  Trustee and B&H were found disinterested by the Bankruptcy Court at a hearing on January 2, 2009.  While a conflict of interest could develop after a disinterestedness hearing, the determination of the Trustee's and B&H's disinterestedness is one that involves applying facts to the law and cannot be an issue of pure law.  In re Madoff II, 2010 U.S. Dist. LEXIS 81492, at *14-15.

11

second standard applies in all other cases – i.e. when there is a reasonable expectation of recoupment by SIPC for the administrative expenses it advances.  Only in this second situation does the bankruptcy court have the authority to determine the amount of such awards, giving "due consideration to the nature, extent, and value of the services rendered" and placing "considerable reliance on the recommendation of SIPC."  15 U.S.C. § 78eee(b)(5)(C).

Under the first standard, SIPC assumes the critical role of reviewing the fee application and making a recommendation as to payment, and the bankruptcy court merely awards the amounts recommended by SIPC.  See In re Bell & Beckwith, 112 B.R. 876, 878 (Bankr. N.D. Ohio 1990) (approving allowances as recommended by SIPC and requested by the trustee and his counsel because "[a]bsent a reasonable expectation of recoupment, the [bankruptcy c]ourt's hands are tied"); In re First State Sec. Corp., 48 B.R. 45, 46 (Bankr. S.D. Fla. 1985) (noting the bankruptcy court had "no discretion nor any choice" in approving fee applications which lie exclusively within the discretion of SIPC under 15 U.S.C. § 78eee(b)(5)(C)).  The United States Supreme Court has recognized the practical impact of section 78eee(b)(5)(C) of SIPA, noting SIPC's influence over SIPA trustees, as "SIPC's recommendation to [the bankruptcy] court on trustee's compensation is entitled to 'considerable reliance' and is, under certain circumstances, binding" under section 78eee(b)(5)(C) of SIPA.  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 274 n.21 (1992).  In so-called "no asset" cases, this standard does not provide for any review by the bankruptcy court of SIPC's recommendation regarding the fee applications.[8]  However, the bankruptcy court can, and should, make a

---

[8] Of particular concern in so-called "no asset" cases is the potential for trustees and trustees' counsel to overcharge when SIPC is responsible for reviewing the hourly rates and hours expended detailed in the fee

determination regarding the existence of a reasonable expectation of recoupment by SIPC based on the court's familiarity as supervisor of the liquidation proceeding.  See In re Bell & Beckwith, 112 B.R. at 878 (finding that there was nothing in the record to support the argument that a reasonable expectation of recoupment existed).

The Bankruptcy Court applied the first standard in its Order approving the Trustee's and B&H's fee applications, (Chaitman Decl. Ex. D, at 2,) concluding at the hearing preceding the Order – after reports from the Trustee, B&H, and SIPC regarding the interim fee application – that "at this juncture there is no reasonable expectation of recoupment."  (Chaitman Decl. Ex. C, at 32.)  The Bankruptcy Court also noted that "the recommendation of SIPA [to pay Trustee's and B&H's fee applications] is a commandment upon the Court."  (Id. at 31.)

Movants argue that a controlling question of law arose here because the Bankruptcy Court "uncritically accept[ed] such a contention [i.e. that there is no reasonable expectation of recoupment] that is patently incredible in light of [the Trustee's recent settlements]."  (Movants' Mem. at 11-12.)  Movants contend that the Bankruptcy Court "abandoned its obligation to monitor the integrity of these proceedings . . . by accepting the bald, unsupported statements by the Trustee and SIPC's counsel" regarding SIPC's recoupment of administrative expenses.  (Id. at 11.)

Whether a liquidation proceeding under SIPA is "without a reasonable expectation of recoupment" is a factual determination.  The statutory language "without reasonable expectation of recoupment" requires a determination by the Bankruptcy Court, based on the facts in the liquidation proceedings it is supervising, that there is no

---

applications, instead of the bankruptcy court which is familiar with the quality and necessity of the legal proceeding conducted in its court.

reasonable expectation that the trustee's and trustee's counsel's fees, which are to be advanced by SIPC, will be reimbursed by the debtor's estate. Movants presented no such facts to the Bankruptcy Court from which it could determine that SIPC has a reasonable expectation of recoupment of the administrative funds advanced to the Trustee and B&H and have not done so here.[9] The outstanding claims exceeded the estate's assets and will be subject to the vagaries of litigation.

Furthermore, when the Bankruptcy Court finds that there is no reasonable expectation of SIPC's recoupment of the administrative advancements, the Bankruptcy Court cannot review interim fee applications for reasonableness. The Bankruptcy Court's determination that SIPC's administrative advancements are "without reasonable expectation of recoupment" under section 78eee(b)(5)(C) of SIPA is not a legal question.

As to the other two requirements under 28 U.S.C. § 158(a), Movants argue that "the level of scrutiny to which a bankruptcy court must subject the Trustee's and/or SIPC's self-interested determination that there is no reasonable expectation of repayment" is a difficult issue of first impression worthy of satisfying the substantial ground for dispute requirement. (Movants' Mem. at 15.)

The question of law Movants raise, however, lacks the urgency and consequences in Klinghoffer that made that issue of first impression difficult. Since the 1978 revision of the SIPA, bankruptcy courts have not taken issue with the assessments and opinions made by SIPC with regard to fee orders. See In re Bell & Beckwith, 112 B.R. at 878 (noting that the term "reasonable expectation of recoupment" remains undefined in SIPA

---

[9] Movants contend that SIPC can reasonably expect to recoup their administrative advances based on a settlement between the Trustee and a BLMIS customer announced three days after the December 14, 2010 hearing before the Bankruptcy Court on the fifth interim fee application. (Movants' Mem. at 6.) Despite Movants allegations that the Trustee, B&H, and SIPC were aware of the settlement at the hearing, (id.,) as Yogi Berra famously said, "It ain't over till it's over."

14

and reported case law, whereas Congress' mandate that the court approve compensation when SIPC's recommendation is the same as the amount requested is clear); In re First State Sec. Corp., 48 B.R. at 46 (considering counsel's requested interim compensation averaging $119 per hour "excessive," but approving the compensation as recommended by SIPC). Without any precedent to create a dispute, let alone a substantial one, there is no substantial ground for a difference of opinion and Movants do not satisfy the second requirement for certifying an interlocutory order for appeal.

Finally, Movants argue that judicial scrutiny of the Trustee's and B&H's billing statements could reveal a conflict of interest, the rectification of which would materially advance the ultimate termination of this litigation. (Movants' Mem. at 15-16.) Movants assume that the Bankruptcy Court is mistaken in its determination that there is no reasonable expectation of recoupment and should scrutinize the billing statements under the second standard set forth in section 78eee(b)(5)(C) of SIPA. However, the removal of a trustee and trustee's counsel in the middle of a liquidation proceeding generally extends proceedings and Movants have done nothing to show that the alleged conflict of interest is anything more than hypothetical. Movants fail to meet the final requirement for certifying an interlocutory order for appeal.

### III. CONCLUSION

Movants' motion for leave to appeal the Bankruptcy Court's December 14, 2010 Order is denied.

IT IS SO ORDERED.

Dated: New York, New York
December 5, 2011

_____

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this order were faxed to:

*Counsel for Movants:*

Helen Davis Chaitman
Becker & Poliakoff LLP
45 Broadway
New York, NY 10006
(212) 599-3322
Fax: (212) 557-0295


*Counsel for Defendant:*

David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York City, NY 10111
(212) 589-4200
Fax: (212) 589-4201

Seanna R. Brown
Baker & Hostetler LLP
45 Rockefeller Plaza
New York City, NY 10111
(212)-589-4200
Fax: (212) 589-4201